UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CALVIN ROBINSON, JR.,

               Plaintiff,               Civil Action No. 20-10499

v.                                 Matthew F. Leitman
                                 United States District Judge

RYAN CHAPKO,               David R. Grand
                                 United States Magistrate Judge

                     Defendant.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 50)

On February 27, 2020, *pro se* plaintiff Calvin Robinson, Jr. ("Robinson") filed this civil rights action pursuant to 42 U.S.C. § 1983, against defendant Ryan Chapko ("Chapko"), a Clayton Township police officer.[1] (ECF No. 1). Although the allegations in Robinson's complaint are sparse, he appears to bring false arrest and excessive force claims against Officer Chapko pursuant to § 1983. (*Id.*). An Order of Reference was entered on September 25, 2020, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (ECF No. 18).

---

[1] Robinson also sued three police departments – the Clayton Township Police Department, the Flushing Township Police Department, and the City of Flushing Police Department (collectively the "Police Department Defendants"). (ECF No. 1). On October 2, 2020, this Court issued a Report and Recommendation ("R&R") to *Sua Sponte* Dismiss Robinson's claims as to these entities. (ECF No. 19). On December 21, 2020, the Honorable Matthew F. Leitman issued an Order Adopting the R&R and Dismissing Robinson's claims against the Police Department Defendants. (ECF No. 35). Thus, Chapko is the sole remaining defendant.

On August 30, 2021, Officer Chapko filed a Motion for Summary Judgment.  (ECF No. 50).  Robinson filed a response to this motion on September 18, 2021 (ECF No. 52), and Officer Chapko filed a reply on October 11, 2021 (ECF No. 53).  On October 18, 2021, Robinson, without seeking or obtaining leave of Court, filed a sur-reply.  (ECF No. 57).

Having reviewed the pleadings and other papers on file, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Officer Chapko's Motion for Summary Judgment **(ECF No. 50)** be **GRANTED**.

## II.   REPORT

### A.   Factual Background[2]

In his complaint, Robinson alleges that, on October 1, 2018, he was arrested by Officer Chapko for domestic violence.  (ECF No. 1, PageID.5).  On October 25, 2018, Robinson pled guilty to three misdemeanor counts of domestic violence in exchange for dismissal of the felony count of assault/strangulation.  (ECF Nos. 50-3, 50-4).  On December 10, 2018, Robinson was sentenced to twelve months of probation and fined $300.00.  (ECF No. 50-5).  The Order of Probation included as a condition that Robinson was to have "**No Contact**" with "**Menomenee Orme**" (the mother of his children), "**Karen**

---

[2] Most of the facts set forth below are taken from Robinson's complaint and deposition testimony, as well as public records attached to Officer Chapko's motion for summary judgment.

2

**Orme**" (Menomenee's adoptive mother), or "**Neesha Orme**" during this time.  (ECF No. 50-6) (emphasis in original).

On July 25, 2019, police were called to the Orme family residence at 2305 North McKinley Road, Flushing, Michigan, to respond to a car fire.  (ECF No. 1, PageID.5; ECF No. 50-2, PageID.257).  On July 26, 2019, officers were called back to the Orme residence when the fire reignited.  (ECF No. 50-2, PageID.257).  Both calls to the police were made by Karen Orme.[3]  (*Id.*, PageID.256-57).  According to Robinson, Karen Orme called the police on July 26, 2019, because he and Menomenee Orme asked to see home surveillance videos regarding the car fire to determine whether someone had deliberately started it.  (*Id.*, PageID.257).  At his deposition, however, Robinson clarified that, on that date, he simply heard Karen Orme tell the police "Calvin here."  (*Id.*, PageID.258).  According to Robinson, when he heard Karen Orme call the police, he left the Ormes' home and began walking, knowing he would be arrested and sent to jail.  (*Id.*, PageID.260).

Robinson further testified at his deposition that, as he was walking, he was detained by police officers from the City of Flushing and Flushing Township, who handcuffed him and transported him back to the Orme residence.  (*Id.*, PageID.259-60).  Robinson claims that, when he was brought back to the Orme residence, he was kept in the Flushing City police vehicle for about an hour.  (*Id.*, PageID.260).  Thereafter, Robinson was advised that he was being arrested for violating the terms of his probation (i.e., the no contact order).[4]

---

[3] According to Robinson, Karen Orme has a long history of calling the police to report that Robinson was abusing her daughter, Menomenee.  (ECF No. 50-2, PageID.259).

[4] Although Robinson testified at his deposition that he did not think the no contact order was still in place at the time of the events in question (ECF No. 50-2, PageID.255), he has produced no

(*Id.*).  At that point, Robinson was moved from the Flushing police car to Officer Chapko's Clayton Township police car.  (*Id.*, PageID.261; ECF No. 50-9, PageID.293).  Officer Chapko removed the Flushing officer's handcuffs and re-handcuffed Robinson with his own cuffs.  (ECF No. 50-2, PageID.261; ECF No. 50-9, PageID.293).  According to Officer Chapko's declaration, at the time these events took place, he knew that Robinson could be violent, as he was the subject of numerous domestic violence complaints.  (ECF No. 50-9, PageID.293).

Officer Chapko placed Robinson in the passenger side of the backseat of his patrol car.  (ECF No. 50-2, PageID.261; ECF No. 50-9, PageID.293).  To secure Robinson's seatbelt, Officer Chapko had to lean across Robinson.  (ECF No. 50-2, PageID.261; ECF No. 50-9, PageID.293).  According to Officer Chapko, while in this vulnerable position, he held Robinson in position by placing his forearm against Robinson's chest.  (ECF No. 50-9, PageID.293).  Although Robinson testified at his deposition that Officer Chapko placed his forearm across Robinson's neck (not his chest) while buckling his seatbelt, he clarified that Officer Chapko did not choke him in the sense that he did not wrap his hands around Robinson's neck.  (ECF No. 50-2, PageID.261-62).  In Robinson's own words, Officer Chapko simply "had force on [his] neck."  (*Id.*, PageID.261).  At all times, Robinson was able to speak and breathe.  (*Id.*, PageID.261-62).  Robinson admits that he

---

evidence in support of this assertion, and by its terms, the no contact order extended for a 12-month period from December 10, 2018 (ECF No. 50-6).  Moreover, as recently as April 5, 2019, Probation Agent Tanisha Knott had petitioned the state criminal court regarding Robinson's repeated violations of the no contact term of his probation.  (ECF No. 50-7).

neither had marks on his neck nor did he seek any medical treatment for this alleged excessive application of force.[5]  (*Id.*, PageID.262).

Subsequently, according to Robinson, Clayton Township Police Sergeant Belanger took Robinson from Officer Chapko's vehicle to his own, drove Robinson from the Orme residence to the Speedway gas station, then released Robinson.  (*Id.*, PageID.262-63). According to Sergeant Belanger, Robinson was in violation of the no contact order that was a condition of his probation stemming from his 2018 domestic violence convictions. (*Id.*, PageID.262; ECF No. 50-10, PageID.297).  However, while at the Orme residence, Sergeant Belanger confirmed with the Orme family that Robinson had been invited there. (ECF No. 50-10, PageID.297).  Sergeant Belanger also contacted Robinson's probation agent, Tanisha Knott, to advise her of the probation violation.  (*Id.*).  Recognizing that he and Officer Chapko had probable cause to arrest Robinson for violating the no contact order term of his probation, Sergeant Belanger elected to simply advise Ms. Knott of Robinson's probation violation and release him because he had been invited to the Orme residence.  (*Id.*).

From this incident, Robinson alleges two violations of his rights under the Fourth Amendment to the United States Constitution: (1) his arrest was without probable cause; and (2) Officer Chapko engaged in excessive force[6] when he leaned over Robinson to

---

[5] Indeed, despite taking copious amounts of videos (everything from surreptitiously recording conversations with Karen Orme to recording interactions with the City of Flushing and Flushing Township police), Robinson did not video this encounter or snap a photo of any alleged injuries. (ECF No. 50-2, PageID.262).

[6] "The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that arise in the context of an arrest or investigatory stop of a free citizen,

secure the seatbelt in the back seat of the patrol car.  (ECF No. 1).  In his motion, Officer Chapko argues that he is entitled to qualified immunity and summary judgment on both of these Fourth Amendment claims because: (1) Robinson's violation of his probation establishes at least arguable, if not actual, probable cause for the arrest; and (2) Officer Chapko's use of force to restrain Robinson while securing the seatbelt did not amount to a violation of clearly established constitutional rights in this particularized circumstance. (ECF No. 50).  For the reasons set forth below, the Court agrees with Officer Chapko's arguments.

### B.     Standard of Review

Federal Rule of Civil Procedure 56 provides: "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect the outcome of the case under governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

---

while the Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims brought by convicted criminals serving their sentences."  *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010) (internal citations and quotations omitted).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

In this case, Officer Chapko asserts that he is entitled to qualified immunity from Robinson's § 1983 false arrest and excessive force claims. (ECF No. 50, PageID.240-47). The doctrine of qualified immunity insulates state actors from liability in close-call situations. *See Saucier v. Katz*, 533 U.S. 194, 206 (2001) (explaining that the defense is intended to protect state actors who must operate along the "hazy border" that divides acceptable from unreasonable conduct). Once the qualified immunity defense is raised, "the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established." *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016). A plaintiff must satisfy both of these prongs, but the Court may take up the questions in whichever order it sees fit. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (*abrogating*

7

*in part Saucier*, 533 U.S. at 201).

The qualified immunity defense may be raised at any stage of the case.  Where, as here, it is raised in a motion for summary judgment, courts must weave the summary judgment standard into each step of the qualified immunity analysis.  *See Scott v. Harris*, 550 U.S. 372, 377-78 (2007).

### C.    Analysis

#### 1.    *Officer Chapko is Entitled to Qualified Immunity on Robinson's False Arrest Claim*

As set forth above, Robinson alleges that he was falsely arrested by Officer Chapko. However, the law provides that Officer Chapko is entitled to qualified immunity on this claim because there was at least arguable – if not actual – probable cause for the arrest.  *See Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010); *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 214 (6th Cir. 2011).  Indeed, an officer can lawfully arrest the plaintiff "so long as there is probable cause to arrest [him] for ***some*** crime, even if the crime for which there is probable cause is different from the stated crime of arrest."  *Amis v. Twardesky*, 637 F. App'x 859, 861 (6th Cir. 2015) (emphasis added) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[The officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.")); *see also McLeod v. Bender*, No. 13-12878, 2015 WL 1470071, at * (E.D. Mich. Mar. 30, 2015) ("[I]n an unlawful arrest case in which the defendants raise qualified immunity as a defense, … [i]f the officers can establish that they had *arguable* probable cause to arrest the plaintiff, then the officers are entitled to qualified immunity, even if a court later

determines that they did not actually have probable cause.") (internal quotations omitted) (emphasis in original).

In this case, there can be no dispute that there was probable cause to arrest Robinson on July 26, 2019. As explained above, Robinson was on probation at the time in question as a result of his having plead guilty to three counts of domestic violence. (ECF No. 50-5). As a condition of his probation, Robinson was ordered to have "**No Contact**" with "**Menomenee Orme**, **Neesha Orme**, or **Karen Orme**." (ECF No. 50-6) (emphasis in original). Robinson admits, however, that he was at the Orme residence, and had contact with the Orme family, on July 25 and 26, 2019 (at a minimum). (ECF No. 50-2, PageID.256-60).

Pursuant to MCL 765.6b(1), a person who violates a no contact order "will be subject to arrest without a warrant." Similarly, the criminal offense of stalking occurs where an individual harasses the victim through unconsented contact, which includes appearing at the victim's residence and entering or remaining on the victim's property. *See* MCL 750.411h(1)(e). The offense is elevated from stalking to the five-year felony of aggravated stalking where, like here, these actions violate a condition of probation. MCL 750.411i(2)(b); MCL 750.411i(3).

Here, Robinson admits that he was at the Orme residence on the date in question and that Karen Orme called the police and reported his presence. (ECF No. 50-2, PageID.257-58). Given the existence of the no contact order, which was put in place for the protection of the Orme family, and the fact that Karen Orme called the police and reported that Robinson was at her residence, Officer Chapko had arguable – if not actual –

9

probable cause to arrest Robinson for his "unconsented contact"[7] and suspicion of aggravated stalking, in violation of MCL 765.6b and MCL 750.411i, respectively. Put another way, at a minimum, it was not clearly established on July 26, 2019, that arresting Robinson under these circumstances violated Robinson's Fourth Amendment rights. Accordingly, Officer Chapko is entitled to qualified immunity and summary judgment on Robinson's false arrest claim.

### 2.   Summary Judgment is Warranted on Robinson's Excessive Force Claim

Robinson also alleges that Officer Chapko used excessive force when securing his seatbelt, testifying at his deposition that he "felt like [Officer Chapko] was choking [him]." (ECF No. 50-2, PageID.261). Chapko argues that he is entitled to qualified immunity as to this claim, and the Court agrees.

To begin with, as Officer Chapko points out, the evidence establishes that he did not in fact "choke" Robinson. To choke is defined as "to check or block normal breathing of by compressing or obstructing the trachea or by poisoning or adulterating available air."[8] Here, Robinson admitted at his deposition that he was able to breathe, talk, and even yell while Officer Chapko allegedly applied the force in question. (*Id.*, PageID.261-62). Thus, the facts establish that Officer Chapko did not "choke" Robinson.

---

[7] Any argument by Robinson that he was an invitee of one of more of these three individuals fails to raise a material question of fact as to the probable cause issue for two reasons. First, the no contact order was unequivocal and did not make an exception for Robinson being an invitee. (ECF No. 50-6). Second, even if he became an invitee at some point, that would not overcome the fact that one of the protected individuals called the police to report Robinson's presence there.

[8] *See* https://www.merriam-webster.com/dictionary/choke, last accessed October 27, 2021.

Moreover, regardless of how Officer Chapko's alleged forearm force is characterized, and whether Officer Chapko's forearm was placed against Robinson's neck or chest, Robinson failed to raise a material question of fact that this application of force was not objectively reasonable under the circumstances. Under the Fourth Amendment, a police officer, in the course of making an arrest, investigatory stop, or other "seizure" of a person may use only such force as is objectively reasonable under the circumstances. *See Graham v. Connor*, 490 U.S. 386, 397 (1989). Under the "objective reasonableness" standard, a court analyzes whether "the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. Reasonableness is determined by "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (internal quotation marks and citations omitted).

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (internal quotations and citation omitted). Determining whether there has been a Fourth Amendment violation by an individual officer requires consideration of "(1) the severity of the crime at issue; (2) the threat of immediate danger to the officers or bystanders; and (3) the suspect's attempts to resist arrest or flee." *Wysong v. City of Heath*, 260 F. App'x 848, 854 (6th Cir. 2008) (citing *Graham*, 490 U.S. at 396). "The Court should judge the lawfulness of the conduct from the 'perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight.'" *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d

11

394, 401 (6th Cir. 2009) (quoting *Graham*, 490 U.S. at 396).  Moreover, to determine whether the amount of force exerted by a police officer is excessive, a court must "apply an objective reasonableness test, looking to the reasonableness of the force in light of the totality of the circumstances confronting the defendants, and not to the underlying intent or motivation of the defendants." *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013). The circumstances should be evaluated at the moment force is employed.  *See Bouggess v. Mattingly*, 482 F.3d 886, 889 (6th Cir. 2007) (stating that the reasonableness of the use of force at a particular time is based on an "objective assessment of the danger a suspect poses at that moment").  Courts considering the objective reasonableness of a police officer's actions also must account for "the fact that police officers are often forced to make split-second judgments –in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397. This standard represents "a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).

Analyzing the record evidence against these standards makes clear that Officer Chapko is entitled to qualified immunity on Robinson's excessive force claim.  At the time the allegedly excessive force was applied, Officer Chapko knew that Robinson had been convicted of committing domestic violence against Menomenee Orme at the Orme residence. (ECF No. 50-9, PageID.293).  By Robinson's own admission, Officer Chapko knew that a judge had ordered that Robinson have no contact with the victim and her family.  (ECF No. 52, PageID.302-03).  Officer Chapko also knew that Robinson was, at

12

the time, being held for violating the no contact order that had been entered as a condition of his probation.  And he knew that Robinson had just been at the home, but had fled when he heard Karen Orme tell the police dispatcher, "Calvin here."

Even under Robinson's version of the events, he has failed to raise a material question of fact that Officer Chapko's use of force to secure Robinson while fastening his seatbelt was objectively reasonable.  First, it was clearly reasonable for Officer Chapko to use *some* force to ensure his own safety while buckling Robinson's seatbelt.  As Officer Chapko indicated in his declaration, he knew that Robinson "had been previously convicted of violent criminal offenses" and "leaning across Mr. Robinson placed [him] in a vulnerable position[.]"   (ECF No. 50-9, PageID.293).   Second, while Robinson characterizes the force used by Officer Chapko as "choking," it is the actual evidence, not labels that matter, and Robinson admitted at his deposition that the force Officer Chapko deployed was weak enough such that Robinson never stopped talking or yelling, let alone breathing.  (ECF No. 50-2, PageID.261-62).  Robinson did not have any marks on his neck and did not seek any treatment as a result of Officer Chapko's application of force.  (*Id.*).  And, finally, Robinson has pointed to no case discussing the force used to secure an arrestee while applying a seatbelt, meaning that it was not clearly established on July 26, 2019, that the type of force allegedly applied by Officer Chapko amounted to a Fourth Amendment violation.

In sum, Officer Chapko is entitled to qualified immunity on Robinson's excessive force claim because there is no genuine issue of material fact that, under the totality of the circumstances, the force applied by Officer Chapko while buckling Robinson's seatbelt

was objectively reasonable.

## III.    CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Officer Chapko's

Motion for Summary Judgment **(ECF No. 50)** be **GRANTED**.


Dated: October 29, 2021                          s/David R. Grand_____
Ann Arbor, Michigan                              DAVID R. GRAND
                                                 United States Magistrate Judge


## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and

Recommendation but are required to act within fourteen (14) days of service of a copy

hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to

file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*,

474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991);

*United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections

which raise some issues, but fail to raise others with specificity, will not preserve all the

objections a party might have to this Report and Recommendation.  *Willis v. Secretary of

HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829

F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any

objections is to be served upon this magistrate judge.  A party may respond to another

party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P.

72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address

specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 29, 2021.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager

15